**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAUL ALBERTO PEREZ-REYES, | ) | |
| Plaintiff, | ) | C.A. No. 07-340 Erie |
| | ) | |
| vs. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| JEFFREY BEARD, et al., | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that:

1.      The Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed on behalf of the Commonwealth Defendants [Document # 55] be granted;

2.      Plaintiff's Motions for Summary Judgment [Document ## 68 and 78] be denied; and

3.      Defendant Baker's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Document # 71] be granted.

The Clerk of Courts should be directed to close this case.

**II.      REPORT**

**A.      Relevant Procedural History**

On December 10, 2007, Plaintiff Raul Alberto Perez-Reyes, an inmate at the State Correctional Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 against:  Jeffrey Beard ("Beard"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Marilyn S. Brooks, former Superintendent of SCI-Albion ("Brooks"); Maxine Overton, Health Care Administrator at SCI-Albion ("Overton"); Dr. Calderbank, a dentist employed by the DOC ("Calderbank"); Linda Maruschak, a dental hygienist employed by the DOC ("Maruschak") (all of the foregoing are collectively referred to as "Commonwealth Defendants"; and Dr. Baker, a physician under contract to provide medical services to inmates at

SCI-Albion ("Baker"). Plaintiff raises various claims against Defendants based on denial of medical and dental care under the Eighth Amendment, retaliation for the exercise of his First Amendment rights, and violation of his due process rights under the Fourteenth Amendment. In addition, Plaintiff purports to assert state tort law claims of negligence, false pretense, deception, and fraud. As relief for his claims, Plaintiff seeks monetary damages and injunctive relief.

On April 10, 2008, the Commonwealth Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 55], arguing, *inter alia*, that: (i) Plaintiff's claims against the Commonwealth Defendants in their official capacities are barred because they are immune from suit under the Eleventh Amendment and/or they are not "persons" under 42 U.S.C. § 1983; (ii) Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Beard, Brooks, and Overton, must be dismissed because they did not have authority to make treatment decisions; (iii) Plaintiff's retaliation claims fail because he has not shown that he suffered adverse action; (iv) the Commonwealth Defendants are entitled to sovereign immunity from Plaintiff's state tort claims; and (v) Plaintiff has failed to show that any of the Commonwealth Defendants were deliberately indifferent to his medical needs. Plaintiff filed responses to this motion on April 17 and April 23, 2008. [Document ## 64 and 66].

On April 28, 2008, Plaintiff also filed a motion for summary judgment [Document # 68], asserting that he is entitled to judgment on his claims, as a matter of law. Both the Commonwealth Defendants and Defendant Baker filed responses to this motion. [Document ## 77 and 82].

On April 29, 2008, Defendant Baker also filed a motion to dismiss Plaintiff's complaint, or in the alternative, motion for summary judgment [Document # 71], arguing, essentially, that Plaintiff has failed to state any claim against him upon which relief may be granted. In response, Plaintiff filed a motion for summary judgment against Defendant Baker, generally reiterating his claim that he is entitled to judgment as a matter of law. [Document # 78]. This matter is now ripe for consideration.

**B.  Relevant Factual History**

**1.  Hernia Treatment**

In or around September 2005, Plaintiff was transferred from SCI-Camp Hill to SCI-Albion to serve a sentence of two to four years imprisonment for drug offenses. (Complaint, Exhibit A at ¶ 10).  On or about October 21, 2005, Plaintiff filed a medical request complaining about a left sided hernia that was swollen and painful. (Document # 67 at p. 3).  Plaintiff was scheduled for sick line on October 25, 2005, but he was a no show. (Document # 67 at p. 12). Plaintiff was subsequently seen on December 13, 2005, by Daniel Telega, a physician's assistant at SCI-Albion, who assessed an inguinal hernia and referred Plaintiff to Defendant Baker for evaluation. (Document # 55, Exhibit H at p. 5).  Plaintiff was examined by Defendant Baker on December 30, 2005, at which time Baker prescribed a hernia guard to be worn by Plaintiff and scheduled a follow-up visit. (Document # 55, Exhibit I).

On January 3, 2006, Plaintiff filed a grievance complaining that he was being denied surgery for his hernia because Defendant Baker did not want to "waste[] tax-payers['] money." (Document # 55, Exhibit H at p. 6).  Defendant Overton conducted an interview of Plaintiff on January 5, 2006, regarding his grievance, during which she explained that surgery for a hernia was not required unless it was strangulated and in danger of becoming gangrenous.  During this interview, Plaintiff informed Defendant Overton that he was not wearing the hernia guard prescribed by Defendant Baker. (Document # 55, Exhibit H at p. 5).

Plaintiff then filed a grievance on January 6, 2006, claiming that Defendant Baker inappropriately fondled his "private parts" during the examination, and stating that he did not want Defendant Baker examining him any more. Document # 67 at p. 14).  Defendant Overton responded to this grievance on January 9, 2006, noting that Plaintiff did not mention any inappropriate conduct during her interview of him on January 5, 2006.  Nevertheless, Defendant Overton assured Plaintiff that a second person would be present during all future examinations by Defendant Baker. (Document # 67 at p. 13).  However, Plaintiff failed to appear for follow-up

visits with Defendant Baker that were scheduled for February 6, 13, and 23, 2006. (Document # 55, Exhibit H at p. 1).

On March 6, 2006, Plaintiff was seen by Christine Zirkle, a registered nurse at SCI Albion, who noted that Plaintiff refused to wear the prescribed hernia guard and that he stated he was "examined too much" and "want[ed] surgery." (Document # 55, Exhibit K). Plaintiff's request for surgery was denied by SCI-Albion on August 8, 2006, and Plaintiff was subsequently paroled on August 31, 2006. (Document # 55, Exhibit C, ¶ 1). On September 11, 2006, Plaintiff was sent to the Allentown Community Correctional Center ("Allentown CCC") on pre-release status, where Plaintiff sought medical attention for his hernia and was immediately scheduled for surgery. (Complaint at p. 5, ¶ 4). According to Plaintiff, surgery to repair his hernia was performed on or about December 19, 2006, at Sacred Heart Hospital in Allentown, Pennsylvania. (Complaint, Exhibit A at ¶ 25). Plaintiff was subsequently returned to SCI-Albion as a parole violator on January 31, 2007. (Complaint at p. 6, ¶ 10).

## 2.     Dental Treatment

After Plaintiff was transferred to SCI Albion, he was seen in the dental department for sick call on October 25, 2005. (Document # 55, Exhibit C, ¶ 2). Plaintiff was then referred to a dental hygienist for treatment of heavy calculus and gum bleeding on November 4, 2005. (Id.). Plaintiff was next seen by Defendant Maruschak on August 8, 2006, at which time he received treatment for moderate calculus and heavy gum bleeding. (Document # 55, Exhibit F at p. 1). Defendant Maruschak also noted that Plaintiff required fillings in seven of his teeth. (Id.).

On April 13, 2007, Plaintiff was seen by Defendant Calderbank in response to a "very nasty aggressive sick call slip" regarding the dental service he was receiving. (Id.). Defendant Calderbank noted that Plaintiff would receive more frequent cleanings and prescribed Plaintiff a Chlorhexidine rinse to be used two times a day for thirty days. (Id.).

On April 17, 2007, Plaintiff reported to Defendant Maruschak for an oral examination

and teeth cleaning, but left without letting her complete the treatment after accusing her of trying to drown and torture him when she instructed him to swallow water in his mouth. (Id.). On the same day, Plaintiff filed a grievance against Defendant Maruschak claiming that she was torturing him in retaliation for his complaints about the dental department. (Document # 55, Exhibit E at p. 17).

Plaintiff next reported to Defendant Maruschak on April 26, 2007, to have his teeth cleaned, but he, again, left without receiving treatment. (Document # 55, Exhibit G at p. 2). Later the same day Plaintiff filed another grievance against Defendant Maruschak complaining that she was handling dental tools without wearing gloves and was placing the "main tool" in the "spit bowl." (Document # 55, Exhibit E at p. 15).

On April 30, 2007, Defendants Overton and Calderbank met with Plaintiff to discuss his complaints and his dental plan. During this meeting, it was explained to Plaintiff that part of his treatment plan involved scaling, which was painful and would cause his gums to bleed, and that he would be pre-medicated for pain. Defendant Calderbank also indicated that he would be present to handle any of Plaintiff's complaints or concerns. (Document # 55, Exhibit E at pp. 14, 16).

On May 14, 2007, Plaintiff filed a grievance complaining that the dental department did not provide periodontal treatment. (Document # 55, Exhibit E at pp. 10-11). In response, Christine Zirkle stated that "[o]n May 19, 2007, [Defendant] Calderbank and Dr. Angelici [DOC's Chief of Dentistry] formulated a plan of care specifically treating periodontal disease, although the inmate will have an active role in the success of his care." (Id. at p. 9). This plan of care included having Plaintiff rinse with Chlorhexadine two times a day for thirty days. Accordingly, from June 11, 2007 through July 31, 2007, Plaintiff reported to the dental department on, at least, 53 occasions to rinse with Chlorhexadine. (Document # 55, Exhibit F at pp. 2-7). In addition, Plaintiff underwent quadrant sub-scaling to treat his periodontal disease on June 20, 2007, July 11, 2007, and August 9, 2007. (Id. at pp. 3, 5, 7).

On July 11, 2007, Plaintiff entered a signed handwritten note in the dental record acknowledging that he was "very please [sic]" with the treatment and that the dental department was doing a "good job." (Id. at p. 6). In addition, Dr. Calderbank noted on October 3, 2007, that "[i]n comparison [with] charting ... done 6-2-07, pockets have diminished approaching normal 1-3 mm. depth... [Plaintiff] claims he has no bleeding areas when flossing & claims to be flossing daily." (Id. at p. 8). However, Plaintiff failed to show at his next scheduled dental appointment on November 1, 2007, claiming that he was treated with an infected dental tool during the last visit. (Id.). At this time, he was asked and agreed to sign a release form acknowledging his understanding that, by refusing treatment, he was risking "continued gum disease, tooth & bone loss, [and] worsening of existing condition." (Document # 55, Exhibit G at p. 3). Subsequently, Plaintiff refused periodontal treatment again on February 1, 2008, and refused to sign a release form informing him that, by refusing treatment, he was risking "pain, swelling, bleeding, infection, tooth loss, possible death." (Document # 55, Exhibit F at p. 9; Exhibit G at p. 4).

###    3.    Food Grievances

From August 1, 2007, through September 30, 2007, Plaintiff filed a series of grievances complaining about the "mess-up food trays" he was allegedly receiving from the inmate food servers. (Document # 55, Exhibit A). In particular, Plaintiff claimed that he variously received "cold rice full of butter" and a food tray with "dirty spots of liquid on the tray." (Document # 55, Exhibit A at pp. 3, 7). In addition, Plaintiff claimed that staff members were attempting to put poison in his food and mouthwash. (Id. at p. 1). In response, Plaintiff was instructed to immediately report any problems with his food tray to either the instructor working the food line or the officer in the dining hall. (Id. at pp. 4, 6). Plaintiff was further informed that there was no evidence to substantiate his claim that staff was attempting to poison him. (Id. at p. 1).

## C.     Standards of Review

### 1.     Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).   The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S.  265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at ___, 1974.

## **2.** **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by

8

affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this

Court will consider facts and make inferences where it is appropriate.

### D.     Discussion

#### 1.     Official Capacity Claims

The individual Commonwealth Defendants assert that, to the extent Plaintiff is suing them in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment.  This Court agrees.  It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)(holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000)(holding that individuals are barred from seeking monetary damages from state governments or state agencies).  See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable here.  The Commonwealth of Pennsylvania has not consented to be sued.  Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)).  Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table).  Thus, any claims for monetary damages

against the Commonwealth Defendants in their official capacities should be dismissed.

## 2. Eighth Amendment Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[1] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

---

[1] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

### a.    Hernia Treatment

Plaintiff asserts that, from November 2005 to September 11, 2006, he was refused surgery for his inguinal hernia because SCI-Albion's medical department did not want to incur the costs. (Complaint at p. 5, ¶4; Exhibit A at ¶¶ 15, 16).  This claim falls well short of demonstrating deliberate indifference to Plaintiff's serious medical needs.  In fact, the medical records make clear that Plaintiff received frequent medical attention for his hernia condition, and was prescribed conservative treatment in the form of a hernia guard because it was determined that the hernia was reducible.  Unfortunately, Plaintiff chose not to heed Defendant Baker's recommendations and refused to wear the hernia guard, as prescribed.  Plaintiff also failed to appear for a number of his scheduled appointments with Defendant Baker, and was, essentially, uncooperative with medical staff, because of his insistence that surgery was required.  However, Plaintiff's refusal to follow the medical staff's recommendations based upon his belief that he required surgery amounts to nothing more than his disagreement with the course of treatment he was given, which does not sustain a cognizable Eighth Amendment claim.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).  Accordingly, summary judgment should be entered in favor of Defendants and against Plaintiff with regard to this claim.

### b.    Dental Treatment

Plaintiff claims that SCI-Albion's dental department was aware that he had serious gum disease since September 2005, but "did nothing about his deteriorating dangerous condition and ... knowingly, willingly neglected to inform the plaintiff of his serious condition." (Complaint, Exhibit A at ¶ 18).  This claim is without merit.  Plaintiff's dental treatment records demonstrate that he underwent a continuous course of dental care specifically designed to treat his periodontal disease.  This care consisted of nearly sixty visits to the dental department for Chlorhexadine rinses and/or quadrant sub-scaling, all of which reduced Plaintiff's gum bleeding and diminished the pockets that had developed as a result of the disease.  Plaintiff even noted his approval of the

treatment in his dental records.  This litany of treatment and Plaintiff's documented acknowledgment of its effectiveness belies his claim that Defendants were deliberately indifferent to his periodontal disease.  As a result, summary judgment should be entered in favor of Defendants and against Plaintiff with regard to this claim.

### 3.     Retaliation

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a distinct legal analysis.  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[2]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[3]

---

[2]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225.  See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[3]

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions.  "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case."  Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that the Defendants "subjected and continue to the present date to subject the plaintiff to an unconstitutional malicious and criminal retaliation and severe harassment due to his Constitutional[ly] protected legal activities in taking civil action to stop prison staff abuses and their violations of the Plaintiff's Constitutional Rights to 'Due-Medical Care' for his serious medical needs and their violation of the "Due-Process of the Law." (Complaint at p. 3, ¶ 1).  In particular, Plaintiff claims that Defendants retaliated against him by: (i) opening his legal mail; (ii) changing his law library schedule so that other inmates "get the computers and typewriters first;" (iii) keeping him waiting in line at the commissary; (iv) serving him "mess up food trays;" (v) putting him in Psychology call out without his request; (vi) denying him hypertension medication at the med-line window; and (vi) "calling him to a bogus dental call to use infected tools on the plaintiff as an heinous attack to infect the plaintiff." (Complaint at p. 3, ¶¶ 4-6).

---

Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

### a.  Constitutionally Protected Activity

To satisfy the first prong of a retaliation claim, Plaintiff must establish that the activity that allegedly led to Defendants' retaliatory acts was constitutionally protected.  Defendants concede that Plaintiff has met this burden, as filing lawsuits, grievances, requests to staff, and complaints are clearly protected forms of free speech under the First Amendment.

### b.  Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action.  This means that Plaintiff's allegations must be sufficient to demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity.  Defendants contend that Plaintiff has failed to satisfy this prong.

Initially, Defendants argue that all of Plaintiff's alleged instances of retaliatory behavior are either *de minimis* or inconsequential.  As Defendants point out, it is generally recognized by the courts that *de minimis* and inconsequential acts do not rise to the level of "adverse acts" for purposes of retaliation. See, e.g., Thaddeus X. v. Blattner, 175 F.3d 378, 399 (6th Cir. 1999); Riley v. Coutu, 172 F.R.D. 228, 235 (E.Mich. 1997)("certain means of 'retaliation' may be so *de minimis* as to not inhibit or punish an inmate's right to free speech"); Tate v. Dragovich, 2003 WL 21978141 at * 4 (E.D.Pa. Aug. 14, 2003); Snyder v. McGinnis, 2004 WL 1949472 at * 11 (W.D.N.Y. Sept. 2, 2004)("but even if the Court were to assume that the denial of food to the plaintiff on two occasions constituted acts of retaliation, the Court finds that the actions complained of were *de minimis* and not actionable; such actions, even if proved at trial, would not chill a person of ordinary firmness from continuing to engage in first amendment activity").

This Court does not agree that all of the acts alleged by Plaintiff are of a *de minimis* nature.  In fact, the only alleged retaliatory act this Court finds to be *de minimis* is Defendants' alleged act of keeping Plaintiff waiting in line at the commissary.  This is not the type of conduct that would

deter a person of ordinary firmness from engaging in constitutionally protected activity. As a result, summary judgment should be entered in favor of Defendants with regard to Plaintiff's retaliation claim arising from such conduct.

More persuasive is Defendants' primary argument that Plaintiff cannot show that any of the alleged retaliatory conduct rises to the level of "adverse action" because Plaintiff has "in no way" been deterred from engaging in constitutionally protected activity, as evidenced by the countless institutional grievances he continued to file, as well as the numerous motions he has filed in this case. "[A]lthough actually being deterred from engaging in First Amendment rights is not required to be proven in order to make out a retaliation claim, the fact that plaintiff was not deterred provides some evidence that can be considered to show that a reasonable prisoner of ordinary firmness would not have been deterred by the alleged [retaliatory conduct]." Bronson v. Minnick, 2006 WL 1670212 at * 4 (W.D.Pa. June 15, 2006). See also Bartelli v. Bleich, 2005 WL 2347235 at * 3 (M.D.Pa. Sept. 26, 2005)("the copiousness of Plaintiff's civil rights lawsuits and complaints against prison officials belie any assertion that defendant['s] alleged threats affected Plaintiff's exercising his First Amendment Rights").

The record evidence in this case alone includes a total of twenty-two (22) grievances that were filed by Plaintiff during the period of time the alleged retaliatory acts are alleged to have occurred. In addition, this Court takes judicial notice of the fact that, to date, Plaintiff has filed approximately thirty (30) motions, objections, and appeals in this case, including seven (7) injunction requests. Such unbridled litigiousness belies any assertion that Defendants' alleged retaliatory acts would deter a person of ordinary firmness from engaging in constitutionally protected activity. Accordingly, this Court finds that Plaintiff cannot meet the second prong of his retaliation claims, and summary judgment should be entered in favor of Defendants and against Plaintiff with regard to such claims.

### 4.     Due Process

Plaintiff alleges that Defendants "violated his due-process rights to file grievances and at time[s] was denied access to the prison grievance system with unreasonable, unfair and ridiculous reasons due to the 'Lack-of Understanding' by the grievance coordinator Ms. Adams and due to the fact that the plaintiff don't use her polite courteous hypocrisy and call it like he see[s] it." (Complaint, Exhibit A at p. 2).

It is well-settled that prisoners have no constitutional right to a grievance process, and prison officials' refusal to provide grievance forms or to respond to inmate complaints does not constitute a due process violation. See Stringer v. Bureau of Prisons, Fed. Agency, 145 Fed. Appx. 751, 753 (3d Cir. 2005)(upholding dismissal of inmate's procedural due process claim based upon the denial of grievance forms); Jackson v. Beard, 2008 WL 879923 at * 7 (E.D.Pa. Mar. 31, 2008)("inmate grievance procedures in themselves do not confer a liberty interest protected by the Due Process Clause"); Thibodeau v. Watts, 2006 WL 89213 at * 5 (M.D.Pa. Jan. 6, 2006)("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable"). Thus, Plaintiff's claim that his due process rights were violated by Defendants' alleged denial of access to the prison grievance system should be dismissed.

### 5.     State Tort Claims

Finally, Plaintiff asserts that Defendants committed "the State/Pennsylvania Torts of Negligence, False Pretense, Deception and Fraud." (Complaint, Exhibit A at p. 2).  These are pendent state law claims under Pennsylvania law, over which this Court is not required to exercise jurisdiction absent the existence of a cognizable federal claim.  Since this Court has already determined that Plaintiff's federal claims under 42 U.S.C. § 1983 must fail as a matter of law, this Court does not have an independent basis on which to exercise jurisdiction over Plaintiff's state law claims.  As a result, Plaintiff's state law claims of negligence, false pretense, deception, and

fraud should be dismissed.

## II.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

    1.    The Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed on behalf of the Commonwealth Defendants [Document # 55] be granted;

    2.    Plaintiff's Motions for Summary Judgment [Document ## 68 and 78] be denied; and

    3.    Defendant Baker's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Document # 71] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights.  See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

           S/Susan Paradise Baxter
           SUSAN PARADISE BAXTER
           Chief U.S. Magistrate Judge

Dated: November 25, 2008

cc:    The Honorable Sean J. McLaughlin
       United States District Judge